UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER PETER CZERPAK,

                Plaintiff,

v.                                               Case No. 23-cv-946-pp

DEPUTY PETER KRUEGER,
DEPUTY WAYNE BLANCHARD
and WALWORTH COUNTY SHERIFF'S DEPARTMENT,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Christopher Peter Czerpak, who is incarcerated at Fox Lake Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants used excessive force and unreasonably seized him in violation of the Fourth Amendment. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On July 17, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $53.65. Dkt. No. 5. The court received that fee on August 2, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.  Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as defendants Walworth County Sheriff's Deputies Peter Krueger and Wayne Blanchard and the Walworth County Sheriff's Department. Dkt. No. 1 at 1. The plaintiff alleges that on July 20, 2020, he was in back of an apartment complex in Whitewater, Wisconsin; he says he had been drinking because he was contemplating suicide. Id. at 2. The plaintiff "noticed some police presence in the area" and tried to run and hide because he was on probation and was not supposed to consume alcohol or possess a

gun. Id. The plaintiff says the officers yelled at him to drop the gun "and instantaneously began shooting at [him] without giving [him] a chance to give [him]self up." Id. He alleges that the officers falsely accused him of pointing a gun; he believes they made this false allegation to justify shooting at him. Id. at 2–3. He says that while there are "several police body cam videos of this incident," none show him pointing a gun at the officers. Id. at 3.

The plaintiff alleges that Krueger and Blanchard (and possibly other non-defendant sheriff's deputies) fired between nine and twelve rounds at him, and he was shot in the back while attempting to run from them. Id. He says he suffered a laceration and contusion to his lung, accumulated blood "in [his] cavity" and a fractured rib. Id. Another bullet hit him in the left wrist, severing an artery and causing nerve damage, and another grazed his chest. Id. The plaintiff says that he stumbled away and that "after a while" he "collapsed to the ground bleeding excessively and falling in and out of consciousness." Id. The plaintiff alleges that the officers began to handcuff him despite his wrist injury, and one officer knelt on his neck "causing [him] unbearable pain." Id.

The plaintiff says he was taken to a hospital emergency room and eventually flown to the University of Wisconsin Hospital in Madison, where he remained until August 5, 2020. Id. at 4. The plaintiff attached a page of his discharge papers from the hospital that confirms his injuries. Dkt. No. 1-1. He says that after his discharge, he spent a month at Holton Manor Nursing Home in Elkhorn before he was taken to the Dodge County Prison Infirmary for three months. Dkt. No. 1 at 4. He remained there "until [he] was able to be more self-

sufficient." Id. The plaintiff asserts that prior to becoming more self-sufficient, he could not feed, dress or wash himself because both his hands had been affected, and he had "a tube inserted in [his] chest for over a month" and could sleep only on his back, causing him much pain and discomfort. Id. The plaintiff says that after almost three years, he "was told that [he] probably will have permanent nerve damage and other disabilities including not being able to use both of [his] hands to the fullest capacity." Id. at 4–5. He alleges that he also likely will have to remain on pain medication and antidepressants for the remainder of his life. Id. at 5. The plaintiff has doctor visits every six months for follow-up, and he has had physical therapy on both his hands. Id. The plaintiff says that because of his injuries, he "might be disabled for life and be unable to work and support [him]self or have a family." Id. He says he continues to suffer pain, discomfort, tingling, stiffness, burning sensations, numbness and physical limitations (he cannot open his right hand, and he is right-handed). Id.

The plaintiff claims the officers used excessive force when they shot at and arrested him on July 20, 2020. Id. at 6. He seeks $2 million in damages. Id.

    C.    <u>Analysis</u>

The court reviews the plaintiff's claim of excessive force during his arrest under the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989); <u>see</u> <u>Tennessee v. Garner</u>, 471

U.S. 1, 7–8 (1985) (claim of excessive force during arrest analyzed under a Fourth Amendment standard). Under the Fourth Amendment, the court applies an objective reasonableness test, considering the reasonableness of the force based on the events confronting the defendant at the time and not on his subjective beliefs or motivations. See Horton v. Pobjecky, 883 F.3d 941, 949–50 (7th Cir. 2018) (citing Graham, 490 U.S. at 396–97; County of Los Angeles v. Mendez, 581 U.S. 420, 426–27 (2017)). This test carefully balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 949 (quoting Graham, 490 U.S. at 396). The court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Horton, 883 F.3d at 949 (quoting Graham, 490 U.S. at 396). The court must consider "the totality of the circumstances, including the pressures of time and duress, and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances," without resort to "hindsight's distorting lens." Id. at 950 (citing Graham, 490 U.S. at 396; Ford v. Childers, 855 F.2d 1271, 1276 (7th Cir. 1988)).

    The plaintiff alleges that the defendants shot him multiple times as he attempted to run from them. He says he fled because he was on probation and had alcohol and a gun, neither of which he was allowed to possess as a condition of his probation. He says the defendants falsely claimed he pointed a

gun at them, when in fact the officers fired at him immediately after telling him to drop his gun. He alleges that he did not otherwise provoke the officers to fire their weapons at him.

An officer's use of deadly force constitutes a seizure under the Fourth Amendment, and that seizure must be reasonable. Scott v. Edinburg, 346 F.3d 752, 755 (7th Cir. 2003) (citing Garner, 471 U.S. at 7). The Supreme Court has explained that officers who have "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others"—for example, by pointing or shooting a gun at them—may reasonably respond with deadly force to prevent his escape. See Garner, 471 U.S. at 11. The Court elaborated that officers may use deadly force 1) "if the suspect threatens the officer with a weapon *or* [2) if] there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm." Id. (emphasis added). The Court explained that in these circumstances, "deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." Id. at 11–12.

The plaintiff admits that he was prohibited from having a gun, and concedes that the officers told him to drop the gun when he attempted to flee. (He also says that he had been consuming alcohol, but it is not clear whether the officers knew that.) He appears to argue that simultaneously with telling him to drop the gun, the officers began firing their weapons. If the plaintiff did point a gun at the officers, or if the officers reasonably believed that he had pointed his gun at them, they may have been justified in shooting at him to

prevent his escape or his use of deadly force. See Scott, 346 F.3d at 758 (citing cases); Sherrod v. Berry, 856 F.2d 802, 805 (7th Cir. 1988) (*en banc*) ("[W]hen an officer believes that a suspect's actions place[] him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force." (italics omitted)).

But the plaintiff alleges that the officers *falsely* claimed that he pointed a gun at them to justify their shooting at him. That would suggest that the officers *did not* have a reasonable concern for their safety because the plaintiff did not threaten the officers when he attempted to run from them. The complaint does not say whether the plaintiff had committed a crime or whether the officers had probable cause to believe that he had. Nor does the complaint explain why the police appeared at the apartment complex where the plaintiff was located. Based on the facts alleged in the complaint, the court cannot infer that the plaintiff had committed a crime, had otherwise given the officers reason to know that he was armed or had given them reason to believe he posed a danger.

The allegations of the complaint suggest that neither Gardner circumstance was present—the plaintiff says he did not threaten the officers and that they had no probable cause to believe he had committed a violent crime. The plaintiff says he did not provoke the officers, use violence or threaten violence before he took off running. But it appears that the plaintiff was armed and the officers knew he was armed. Did the fact that the plaintiff was armed and fleeing allow the officers to use deadly force? The Seventh

8

Circuit has explained that deadly force *may not* be used on a non-violent suspect, even if he is fleeing. See Estate of Starks v. Enyart, 5 F.3d 230, 234 (7th Cir. 1993) ("Fleeing felons who have not resorted to violence are accorded less intrusive seizures."). Nor may officers use deadly force against a fleeing suspect who has not given the officer "any indication that he had committed a violent felony or was dangerous." Ellis v. Wynalda, 999 F.2d 243, 247 (7th Cir. 1993); see Tom v. Voida, 963 F.2d 952, 962 (7th Cir. 1992) (quoting Gardner, 471 U.S. at 11) (explaining that "deadly force is inappropriate when 'the suspect poses no immediate threat to the officer and no threat to others'").

The plaintiff alleges that other parts of the same incident independently support a claim of excessive force. See Deering v. Reich, 183 F.3d 645, 652 (7th Cir. 1999) (quoting Plakas v. Drinski, 19 F.3d 1143, 1150 (7th Cir. 1994)) (noting that "in determining reasonableness, [the court must] 'carve up the incident into segments and judge each on its own terms to see if the officer was reasonable at each stage'"). The plaintiff does not allege that the officers continued to fire their weapons at him after he collapsed to the ground, which could suggest an unreasonable and excessive use of force. See, *e.g.,* Estate of Smith by Haynes v. City of Milwaukee, Wis., 410 F. Supp. 3d 1066, 1073 (E.D. Wis. 2019) (citing cases for proposition that "the shooting of a *subdued* suspect" is not constitutionally reasonable). He alleges that the officers handcuffed him despite his wrist injury, but he does not allege whether the officers knew at the time that they had shot and injured his wrist. He also says one officer knelt on his neck, which caused significant pain. The court can

9

reasonably infer that an officer would know kneeling on the plaintiff's neck caused him pain. These acts may have nonetheless been reasonable given the other circumstances—the plaintiff having a gun and fleeing the officers. See Tom, 963 F.2d at 958 (concluding that police officer "acted reasonably in attempting to handcuff a fleeing person about whom she had a reasonable suspicion of criminal activity"). But at this stage, the court cannot make that determination.

The complaint raises questions of law, the answers to which may or may not equate to a violation of the plaintiff's Fourth Amendment rights depending on what additional facts the defendants produce about the incident. These questions are more detailed and nuanced than should be decided at the screening stage. Because the court cannot say that the complaint, accepted as true, fails to state a claim for relief, the court will allow the plaintiff to proceed on a Fourth Amendment claim of excessive force and unreasonable seizure against Walworth County Sheriff's Deputies Krueger and Blanchard for their shooting of the plaintiff as he fled, handcuffing him and kneeling on his neck while arresting him. Additional facts may show that any or all these actions were reasonable under the circumstances. The officers also may be entitled to qualified immunity. But at this early stage, and construing the allegations in the plaintiff's favor, dismissal is not appropriate.

The plaintiff may not proceed on a claim against the Walworth County Sheriff's Department because it is not a person, and only persons may be sued under §1983. There are some circumstances in which a plaintiff may sue a

*municipality* under §1983. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978). But the Walworth County Sheriff's Department is not a municipality—it is a *department* of a municipality (Walworth County). State law determines whether a sheriff's department may sue or be sued separately from the county of which it is a department. Under Wisconsin law, the Sheriff's Department is an arm of Walworth County; "it is 'not a legal entity separable from the [county] government which it serves,' and therefore is not subject to suit under § 1983." Hobbs v. Shesky, No. 22-cv-492-pp, 2022 WL 16752064, at *8 (E.D. Wis. Nov. 7, 2022) (quoting Whiting v. Marathon Cty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004)); see also Braun v. Elkhorn Police Dep't, No. 23-cv-301, 2023 WL 2894955, at *2 (E.D. Wis. Apr. 11, 2023) (citing Jackson v. Bloomfield Police Dep't, No. 17-C-1515, 2018 WL 5297819, at *1 (E.D. Wis. Oct. 25, 2018), aff'd, 764 F. App'x 557 (7th Cir. 2019)) ("In general, municipal police departments are not suable entities."). The court will dismiss the Walworth County Sheriff's Department because it is not a person and is not a separate entity capable of being sued.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendant Walworth County Sheriff's Department.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on Walworth County Sheriff's Deputies Peter Krueger and Wayne Blanchard under Federal Rule of Civil Procedure 4. Congress

requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Krueger and Blanchard to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$296.35** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Fox Lake Correctional Institution.

12

Case 2:23-cv-00946-PP    Filed 09/08/23    Page 12 of 14    Document 7

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 8th day of September, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**